UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREMAINE MOSES,

                  Plaintiff,                    Civil Action No. 20-13366

v.                                          Paul D. Borman
                                          United States District Judge

SHERMAN CAMPBELL, *et al.*,            David R. Grand
                                          United States Magistrate Judge

                  Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16)

*Pro se* plaintiff Tremaine Moses ("Moses"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against employees of the Michigan Department of Corrections ("MDOC"). (ECF No. 1). This case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 11).

On September 28, 2021, MDOC employees Sherman Campbell and Breanna Gilson (collectively, "Defendants") filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 16). Moses filed a response on October 22, 2021, and Defendants filed a reply on November 15, 2021. (ECF Nos. 18, 19).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**.

## II.     REPORT

### A.      Background

Moses is a MDOC prisoner who is currently confined at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.  He brings this § 1983 civil rights action, alleging violations of his Eighth Amendment rights based on ARF's inadequate response to the COVID-19 pandemic.

In his complaint, Moses alleges that, at the start of the COVID-19 pandemic in March 2020, ARF implemented safety protocols to prevent the spread of COVID-19.[1]  (*Id.*, PageID.6).  But as "the months went on," "questionable things" began to take place that violated these safety protocols.  (*Id.*).  For example, Moses claims that an inmate from a "quarantine unit with active COVID cases" was moved to his unit, and that same inmate "tested positive" for the virus only "a few days later."  (*Id.*).  Additionally, "officers who had worked in the quarantined housing units" began to work "overtime in units where there had been no prior cases," and officers were seen "without their mask on."  (*Id.*, PageID.7).  In short, Moses alleges that the "gross negligence of both custody staff and administration" caused a spread of COVID-19 at ARF.  (*Id.*).  Moses asserts that he contracted COVID-19

---

[1] Safety protocols included suspending family visits for the prisoners, distributing masks to the prisons and prison staff, providing cleaning materials such as bleach and hand soap, and testing staff for COVID-19 before entering ARF.  (ECF No. 1, PageID.6).

while at ARF, which harmed him both physically and emotionally.  (*Id.*, PageID.8).  Based on these allegations, he seeks monetary damages and any other appropriate relief.  (*Id.*). Notably, however, Moses acknowledges that he did not file any grievances regarding his instant claims because "Grievance Procedure states if issue affects multiple prisoners – or large portion of population – it's not grievable."  (*Id.*, PageID.9-11).

Defendants now move for summary judgment on Moses' claims against them, arguing that he failed to properly exhaust his administrative remedies before filing the instant lawsuit.  (ECF No. 16.).

### B.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

In their motion, Defendants argue that summary judgment is warranted on Moses' claims against them because Moses failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 16, PageID.68). The Court agrees that Defendants are entitled to summary judgment.

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The

4

Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.   Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.   In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007).   Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

### The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.   In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").   (ECF No. 16-2, PageID.79).   According to the Policy, "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." (*Id.*, at ¶ F).   However, a "grievance shall be rejected" if, in relevant part, "[t]wo or more prisoners [] have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." (*Id.*, at ¶ J).

A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).   The Policy provides that

if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id*. at ¶¶ Q, W).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id*. at ¶ DD).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶ HH).

### *Moses Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted his Grievance Against Defendants*

In their motion, Defendants argue that "Moses did not exhaust any claims through Step III prior to filing his complaint."  (ECF No. 16, PageID.74).  Attached to their motion is a copy of Moses' "MDOC Prisoner Step III Grievance Report," which shows that Moses did not pursue any grievances through Step III during the relevant time period.  (ECF No. 16-3, PageID.88).

Moses does not dispute that he did not file *any* grievance, much less pursue a grievance related to his instant claims through Step III of the grievance process.  (ECF No. 1, PageID.9-11).  Instead, he argues that the grievance process was "unavailable" to him for the following three reasons: (1) because his "complaint concerns actions of housing unit staff and practices" related to COVID-19 that "affected an entire housing unit," any grievance he filed would have been "rejected as an organized protest per MDOC PD 03.02.130(J)," which "does not allow the filing of unified grievances by two or more inmates"; (2) ARF has a common practice of retaliation against those who file grievances;

6

and (3) the novelty of the COVID-19 pandemic rendered the grievance process futile and incapable of addressing his claims.  (ECF No. 18, PageID.92-94).

The U.S. Supreme Court has reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  Courts have recognized, in some circumstances, that "although completing [all steps of the grievance process] is a sufficient condition, it is not always a necessary one." *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances).

Here, Moses has not raised a material question of fact as to whether the grievance process was "unavailable" to him.  First, he contends that he did not file any grievance because ¶ J(7) of the Policy does not allow "[t]wo or more prisoners [to] jointly file[] a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest."  (ECF No. 16-2, PageID.80, ¶ J(7)).  But that provision has no bearing on his instant Eighth Amendment claims premised on his *own* injuries of "contracting coronavirus" and the negative physical and mental effects he *personally* experienced as a result of Defendants' alleged actions.  (ECF No. 1, PageID.8).  Rather, ¶ F of the Policy makes clear that Moses was required to grieve this issue through an individualized Step I grievance, either concerning a violation of ARF's COVID-19 safety protocols or the dangerous prison conditions that resulted from a

lack of sufficient safety measures that "directly affect[ed]" him as a prisoner housed at ARF.  (ECF No. 16-2, PageID.79, ¶ F) ("Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.").

Second, while Moses broadly asserts that ARF has a "common practice of retaliation i.e. threat of retaliatory transfer" (ECF No. 18, PageID.92), he does not allege that he was ever actually threatened with any form of retaliation.  *See Buffman v. United States*, No. 13-14024, 2015 WL 71840, at *8 (E.D. Mich. Jan. 6, 2015) ("It is well established in this Circuit that nonspecific allegations of fear and subjective feelings of futility will not excuse a failure to exhaust administrative remedies.") (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004).  Thus, such vague allegations of a fear of retaliation do not excuse his failure to exhaust his administrative remedies.

Finally, Moses points to *Valentine v. Collier*, 140 S. Ct. 1598 (2020), in support of his argument that the novelty of the COVID-19 pandemic somehow rendered the MDOC grievance process futile.  Specifically, Moses relies on a portion of Justice Sotomayor's statement in *Valentine* respecting the Supreme Court's denial of an application to vacate a stay of an injunction, which states, in relevant part, "if a plaintiff has established that the procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid-19, the procedures may be 'unavailable' to meet the plaintiff's purposes." *Valentine*, 140 S. Ct. at 1601-02 (Statement by Sotomayor, J.).  But to the extent this statement would apply to Moses' instant case, Moses has presented no argument, much

less evidence, establishing that the MDOC's three-step grievance process was "utterly incapable" of responding to his claims. *See Alexander*, 576 F.3d at 558 (requiring "an affirmative showing with proper evidence."); *see also Veeder v. Tri-Cap*, No. 17-11690, 2018 WL 7254610, at *8 (E.D. Mich. Dec. 13, 2018). Rather, Moses' own complaint reflects that his decision not to file a grievance was based on a mistaken belief that the issue was not grievable due to ¶ J of the Policy. (ECF No. 1, PageID.11).[2]

For all of these reasons, Moses has not established a genuine issue of material fact as to whether the MDOC's three-step grievance process was unavailable to him such that his failure to exhaust his administrative remedies should be excused. Accordingly, Defendants' motion for summary judgment on exhaustion grounds (ECF No. 16) should be granted.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**.


Dated: May 25, 2022                           s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge

---

[2] Moses also argues that P.D. 04.01.150(J) states "housing unit representatives shall meet at least monthly with the RUM and other staff designated by the RUM or designee to discuss matters of concern to the unit population," and contends that "per policy[,] reporting the matter to the housing unit representative constituted exhaustion." (ECF No. 18, PageID.91, 94). But Moses' alleged reporting of any issues to the housing unit representative does not excuse him from the Policy's requirement that he exhaust his claims through the MDOC's three-step grievance process before filing his instant lawsuit. (*See* ECF No. 16-2, PageID.79, ¶ C); *Jones*, 549 U.S. at 200.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 25, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS

10

Case Manager